UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA            :      CRIMINAL NO. 08-592 (JHR)

             v.                :      NOTICE OF MOTION

MICHAEL POWELL                  :


TO:    JACQUELINE M. CARLE
        Assistant United States Attorney
        401 Market Street, 4th Floor
        P.O. Box 2098
        Camden New Jersey 08101

COUNSEL:

           PLEASE TAKE NOTICE that on April 13, 2008, or as soon thereafter as counsel

may be heard, the defendant, Michael Powell, through his attorney, Christopher O'Malley,

Assistant Federal Public Defender, shall move before the Honorable Joseph H. Rodriguez, United

States District Court Judge, at the United States Courthouse, Camden, New Jersey, for an

ORDER, which:

       (1) Orders the government to provide all statements by or attributed to the defendant as

required by Rule 16(a)(1)(A)

       (2) Ordering the suppression of the defendant's arrest statements as violative of his

Miranda Rights.

       (3) Ordering the government to provide the defendant with all evidence which would

exculpate him or mitigate his culpability; and

       (4) Ordering the government to provide a written summary of the testimony of any experts

the government intends to introduce at trial, pursuant to Federal Rule of Criminal Procedure

PDF created with pdfFactory Pro trial version www.pdffactory.com

16(a)(1)(E); and Federal Rule of Evidence 702, 703, 705

(5) Ordering the government to disclose prior to trial any prior evidence it intends to offer pursuant to Federal Rules of Evidence 404(b); and

(6)  Permitting the defendant to file any additional motions that may become necessary related to the disclosure of additional items by the government

(7) Ordering the government to retain and preserve notes of the arresting and attending officers..

In support of these motions, the defendant relies upon the enclosed Memorandum of Law.


Respectfully submitted,

/s CHRISTOPHER O'MALLEY
Assistant Federal Public Defender

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 08-592 (JHR) |
| v. | : | |
| MICHAEL POWELL | : | |

---

MEMORANDUM OF LAW

---

CHRISTOPHER O'MALLEY
Assistant Federal Public Defender
for the District of New Jersey
800 Bridgeview Plaza
Suite 350
Camden, New Jersey 08102

Attorney for defendant
            Michael Powell

PDF created with pdfFactory Pro trial version www.pdffactory.com

## PRELIMINARY

On April 30, 2008 and July 2, 2008 the same branch PNC bank in Glendora, New Jersey was robbed.  On August 8, 2008 a sealed complaint alleged Michael Powell to be the bank robber on both occasions of the above bank.  On August 13, 2008 Michael Powell was arrested.  On that date the defendant was brought before The Honorable Joel Schneider, appointed counsel and a detention hearing was scheduled for August 15, 2008.  At that hearing Mr. Powell consented to detention.  A preliminary hearing was scheduled for August 26, 2008.  Mr. Powell was indicted by grand jury for violating two counts of 18 U.S.C.§ §2113(a) and 2113(d) armed bank robbery, and one count to 18 U.S.C.   §924( c) use of a firearm in connection to the bank robberies.   On September 4, 2008, Mr. Powell appeared before the Honorable Joseph Rodriguez and pled not guilty to all counts.  On February 17, 2009, the Grand Jury returned a four count superceding indictment against him.  This indictment's only change was that it added an additional count of 18 U.S.C.  § 924( c) against Mr Powell.   On February 24, 2009 Mr. Powell was arraigned where he entered not guilty pleas to all counts.  Trial is currently scheduled for April 20, 2009.

## STATEMENT OF FACTS

On April 30, 2008 a PNC, FDIC insured branch bank in Glendora New Jersey was robbed by an unidentified armed robber. The bank lost over $73,000 dollars from this incident.    On July 2, 2008 the same branch PNC bank was robbed again. This time two armed men entered the bank and stole over $38,000.  Both robberies resulted in no arrests and no eye witness identifications or other leads causing a timely arrest.  Through a supervising probation officer , the FBI became aware that a federal supervised released probationer named Michael Powell was in possession of two flat screen televisions which were not commensurate with his job as a line cook at Houlihan's and Applebee's restaurants.  The FBI also learned that another supervised release probationer Everett McKinney may have information of value regarding Powell and he was willing to cooperate against Mr. Powell. The FBI arranged for McKinney to be a confidential informant and electronically record a conversation between Powell and informant McKinney.    Both Powell and McKinney are previously convicted bank robbers, and both were serving terms of supervised release.   In the recorded conversation Powell presented himself as an able bank robber and conversed freely with Mr. McKinney about past and prospective bank jobs, and other ways to gain illicit income.  Arrest warrants were supported by the recorded wire communication and Mr Powell was arrested on August 13, 2008.

## LEGAL ARGUMENT

## POINT I.

## THE GOVERNMENT SHOULD BE REQUIRED TO DISCLOSE ANY STATEMENTS AS REQUIRED BY RULE 16(a)(1)(A).

Under Rule 16(a)(1)(A), a defendant may obtain any written record of the substance of an oral statement made to a known government agent.  Disclosure is required irrespective of whether the government intends to use the statement in its case in chief or for impeachment.  The defendant, therefore, respectfully requests an Order which requires production of any written record of an oral statement or electronic statement via e-mail, including any notes of interviews of the defendant. .

The Rule also requires the government to provide notice of any oral statement made by the defendant to a known law enforcement agent which the government intends to use in its case in chief, in rebuttal or for impeachment.  Disclosure is required even if a written record of the statement does not exist refer to his criminal history.

In this case Mr. Powell had contact and communications with Everett McKinney. Mr. McKinney reported to authorities his communications with the defendant.  Mr. Powell is entitled to disclosure to these communications under the above rule.

POINT II

DEFENDANT'S STATEMENTS MUST BE SUPPRESSED BECAUSE
THEY WERE OBTAINED IN VIOLATION OF HIS MIRANDA
RIGHTS

On April 13, 2008 at 6:15 a.m. FBI agents affected their arrest warrant. That morning agents stormed into Powell apartment found Powell in bed. Agents then bodily moved from his bed and handcuffed him to his bedroom chair. Without advising him of his Fifth Amendment rights under Miranda they began interrogating Powell about his knowledge of the alleged bank robberies and his knowledge of guns. Without his advise of rights Powell responded that he knew of a gun that was in a the hallway closet of the apartment.

Mr. Powell's un-Mirandized statements in response to police questioning while he was in custody must be suppressed to protect his Fifth Amendment rights. Powell was in custody upon his arrest by the FBI. The agents asked Mr. Powell incriminating statements during the course of this search and failed to give Powell Miranda warnings, see Miranda v. Arizona, 384 U.S. 436 (1966), before questioning him. Since Powell's statements were responses to custodial interrogation and he was not warned of his rights, his admission that he possessed and had knowledge of the firearm must be suppressed. See Rhode Island v. Innis, 446 U.S. 291 (1980).

A. Mr. Powell made statements admitting to knowledge of
constructive gun possession

Mr. Powell made incriminating statements that trigger his Fifth Amendment protections. The Fifth Amendment guarantees that "no person . . . shall be compelled in any criminal case to be a witness against himself." New York v. Quarles, 467 U.S. 649, 654

(1984)(quotations and brackets omitted).  "A defendant objecting to the admission of a

confession is entitled to a fair hearing in which both the underlying factual issues and the

voluntariness of his confession are actually and reliably determined."  Jackson v. Denno,

378 U.S. 368, 380 (1964).  Once a defendant challenges the admissibility of a statement,

the government bears the burden of proving it has satisfied the rules of Miranda and its

progeny.  See Miranda, 384 U.S. at 475.   The defendant challenges the admissibility of his

incriminating statement that was given absent any explanation of his Miranda rights.

     B.  Mr. Powell was in custody when he admitted knowledge of
                 gun possession in his apartment

A suspect must be advised of his Miranda rights before custodial interrogation

commences. See, e.g., Miranda, 384 U.S. at 444-45.  "Custodial interrogation" is

"questioning initiated by law enforcement officers after a person has been taken into

custody or otherwise deprived of his freedom of action in any way."  Oregon v. Mathiason,

429 U.S. 492, 494 (1977)(citations and quotations omitted).  A finding that a suspect has

been placed in custody requires a showing of a certain degree of confinement.  The degree

of confinement depends upon the circumstances surrounding the interrogation and upon

whether a reasonable person would have believed that he or she could freely walk away

from the interrogation.  See Thompson v. Keohane, 516 U.S. 99, 112 (1995).

To determine if a suspect was in custody, a court examines the "objective

circumstances of the interrogation, not . . . the subjective views harbored by either the

interrogating officers of the person being questioned."  Stansbury v. California, 511 U.S.

318, 323 (1994).  An objective standard is appropriate because "the only relevant inquiry is

how a reasonable man in the suspect's position would have understood his situation."  Id.

Viewing cases with an objective eye, courts have found that a suspect who has been deprived of some freedom, although not explicitly told he is under arrest, was held in custody for <u>Miranda</u> purposes.   All objective indicia of a functional arrest or restraint on liberty are pertinent in determining if custody existed. <u>See generally</u> <u>Orozco v. Texas</u>, 394 U.S. 324 (1969); <u>United States v. Lee</u>, 699 F.2d 466 (9th Cir. 1982); <u>United States v. Garcia</u>, 496 F.2d 670 (5th Cir. 1974), <u>cert. denied</u>, 420 U.S. 960 (1975).

Such an objective approach, moreover, requires consideration of the location of questioning and its influence on how a reasonable person might construe a situation.   Not unexpectedly, a suspect who is questioned at a police station has been found to be in custody due to the almost inherently coercive effect of the location on a suspect.  <u>See Dunaway v. New York</u>, 442 U.S. 200, 214 (1979) (holding that defendant taken to police station for investigative questioning was in custody).  Indeed, even a person questioned in a public place can be in custody.  <u>See, e.g., United States v. Brown</u>, 720 F.2d 1059, 1068 (9th Cir. 1983). In <u>Brown</u>, a police officer took a suspect into custody at the scene of a traffic accident, but did not give him his Miranda warnings. Another officer who later appeared on the scene initiated a conversation with the suspect using remarks which were functionally equivalent to police questioning.  The court held that the accused was subjected to custodial interrogation due to the officer's intent to elicit incriminating statements from him.  <u>See id.</u> at 1068.

All of the objective circumstances surrounding the defendant's seizure suggest that he was in "custody" when the FBI forced entry into his apartment, rousted him from his bed, handcuffed him to his chair and searched his apartment.   He was immediately handcuffed,  he was physically searched and interrogated about any potential firearm in the

PDF created with pdfFactory Pro trial version www.pdffactory.com

apartment.    According to the government Powell stated that he was aware of a gun located in the hallway closet.

The defendant's compelled presence during the search, by itself, proof of an inherently coercive setting relevant to a "custody" determination. Powell was "quickly apprehended,' immediately handcuffed and searched. .  Given this particular scenario, a reasonable person in Powell's  position could not have believed that he was free to terminate the encounter and leave. Thus, he was in custody for <u>Miranda</u> purposes.

C.  <u>FBI's  questions to the defendant  constituted interrogation</u>

Once finding that Mr. Powell  was in custody, this Court should then also find, based on the testimony, that Mr. Powell was subjected to interrogation. "Interrogation" takes place when a suspect is "subjected to either express questioning or its functional equivalent."  <u>Innis</u>, 446 U.S. at 301.  It encompasses "any words or actions on the part of the police officer (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."  <u>Id.</u>

The Police asked Powell express questions about Powell's knowledge of  firearms which constitute obvious "interrogation." <u>See Innis</u>, 446 U.S. at 301; <u>see also</u> <u>United States v. Benton</u>, 996 F.2d 642, 644 (3d Cir.) (finding that offering suspect incriminating information leaves the suspect in a position in which believes he is compelled to respond), <u>cert. denied</u>, 510 U.S. 1016 (1993); <u>United States v. Elias</u>, 832 F.2d 24, 26 (3d Cir. 1987) (recognizing that direct question, regarding the rifle is interrogation). The police  directly asked Powell  about his knowledge of the gun possession.  Moreover, when the agents posed the question, they had already searched Powell and determined he was not in direct possession of a firearm.  Thus, at the very least, the police questions were "reasonably

PDF created with pdfFactory Pro trial version www.pdffactory.com

likely to elicit an incriminating response." <u>Innis</u>, at 301.  Since custodial interrogation existed in this case, Powell's  un-Mirandized statements must be suppressed on the ground that they violate his Fifth Amendment privilege against self-incrimination.

PDF created with pdfFactory Pro trial version www.pdffactory.com

POINT III

THE GOVERNMENT SHOULD BE COMPELLED TO PROVIDE DEFENDANT WITH ALL MATERIAL WHICH WOULD EXCULPATE HIM OR MITIGATE HIS CULPABILITY.

Defendant moves under Fed. R. Crim. P. 12(b)(1) and 16 for an order directing the government to disclose all evidence which is favorable and material to him, including information which would exculpate him or mitigate his culpability. Due process considerations require the Government to disclose evidence favorable to the accused or detrimental to the Government's case. Brady v. Maryland, 373 U.S. 83 (1963). A prosecutor's failure to reveal Brady material may result in the reversal of a defendant's conviction. See, e.g. United States v. Galvis-Valderamma, 841 F. Supp. 600 (D.N.J. 1994). The individual prosecutor responsible for a case "has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police", and has an inescapable responsibility to "disclose known, favorable evidence rising to a material level of importance." Kyles v. Whitley, 514 U.S. 419, 437-38 (1995).

The Brady holding imposes an affirmative duty on the prosecution to produce, at the appropriate time, requested evidence that is materially favorable to the accused, either as direct or impeaching evidence.[1] Brady is not a rule of discovery; it is a rule of fairness and minimum prosecutorial obligation. United States v. Starusko, 729 F.2d 256, 262 (3d

---

[1] Knowledge or possession of exculpatory evidence is imputed to the prosecutor as the agent of the government. The government has constructive knowledge or constructive possession of information when "a prosecutor has no actual knowledge [but] he should nevertheless have known that the material at issue was in existence." United States v. Joseph, 996 F.2d 36, 39 (3d Cir. 1993), cert. denied, 114 S. Ct. 357 (1993). A prosecutor should know information exists when that information was known to the "prosecution team." United Sates v. Perdomo, 929 F.2d 967, 970 (3d Cir. 1991).

PDF created with pdfFactory Pro trial version www.pdffactory.com

Cir. 1984). Indeed, the standard order for discovery and inspection in this district incorporates such a requirement. Furthermore, any doubt as to whether information is Brady material should be resolved in favor of disclosure. United States v. Agurs, 427 U.S. 97, 108 n.4 (1976); United States v. Bailleaux, 685 F.2d 1105 (9th Cir. 1982).

This requirement of candor by the sovereign includes any information which concerns a witnesses' credibility as well as matters cogent to the guilt or innocence of the accused. United States v. Bagley, 473 U.S. 667, 676 (1985); Giglio v. United States, 405 U.S. 150 (1972); Napue v. Illinois, 360 U.S. 264 (1959). In holding that impeachment evidence falls within the Brady rule, the Court stated,

> [t]he jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that the defendant's life or liberty may depend.

Napue v. Illinois, 360 U.S. at 269. The Third Circuit more recently reiterated this rule:

> Materials that must be disclosed are those that go [to] the heart of the defendant's guilt or innocence and materials that might affect the jury's judgment of the credibility of a crucial prosecution witness.

United States v. Hill, 976 F.2d 132, 134-35 (3d Cir. 1992) (citing Giglio v. United States, 405 U.S. at 154, and United States v. Higgs, 713 F.2d 39 (3d Cir. 1983), cert. denied, 464 U.S. 1048 (1984)).

Pursuant to these principles, the defendant requests that the court order the government to produce the following material:

1. PNC Records and Receipts of monetary loss suffered by the two robberies of its Glendora Branch

2. All evidence regarding others who are suspected of robbing the PNC Glendora Branch Bank.

PDF created with pdfFactory Pro trial version www.pdffactory.com

3.  FBI Statistics of FDIC insured bank robberies, including proportion of unsolved and open cases of such robberies.

4.  Any and all information concerning witness voice recognition of the defendant by bank employees or customers.

5. Any and all information tending to show that the source(s) of the information provided to the Probation Department and FBI  has provided unreliable information in the past, has a criminal record of any kind, and/or is unknown to the police.

6.  The results of any and all forensic tests, including fingerprint tests.

7.  Any and all records and information revealing prior criminal convictions or guilty verdicts or juvenile adjudications, including but not limited to relevant "rap sheets," of each witness the government intends to call at trial.

8.  Any and all records and information revealing prior or subsequent misconduct, criminal acts or bad acts of any witness the prosecutor intends to call at trial including, without limitation, allegations of criminal conduct of which the government  knows, or through reasonable diligence, should have reason to know.

9.  The dates and a description of any and all consideration or promises of consideration given during the course of the investigation and preparation of this matter by any law enforcement officials, including prosecutors or agents, police, or informers, to or on behalf of any witness the prosecutor intends to call at trial, or any such considerations or promises expected or hoped for by any such witness at any future time.

10.  Any electronic, written or oral statement, whether or not reduced to writing, made by any potential prosecution witness which in any way contradicts or is inconsistent with or different from other oral or written statements he has made, and any such statement made by any person, whether a witness or not, which in any way contradicts, or is inconsistent with or different from any statement made by a prosecution witness.

11.  Any and all information concerning informants known to the police, the name, address and other identifying information in the government's possession.

12. Any and all information of Probation Departments chronological logs, and Probation supervision downloads for Everett McKinney and Michael Powell during the periods September 1, 2007 through present collected by the Probation Department.

13. All information regarding Sprint/Nextel cell phone usage by Michael
Powell, during the dates of April 1, 2008 through August 13, 2008,
including but not limited to call detail reports, tower record traffic detail
records,  cell tower locations, cell tower location maps, tower triangulation
records, GPS records, FCC cell tower antenna structure data within the
Philadelphia metropolitan area.

There can be no question, moreover, that the right to disclosure under Brady includes the

right to pretrial discovery by the defense.  Materials must be disclosed to the defendant for

their effective use at trial.  United States v. Agurs, 427 U.S. 97 (1976).  Defendant submits

that due process mandates pretrial disclosure of Brady materials in the present case.

Defense counsel must be given sufficient time to evaluate the favorable material and

prepare for its presentation at trial.  Exculpatory information may lead to other potential

witnesses or defenses and the need for additional investigation.

The government's obligation to furnish much of the requested information once trial

has begun, pursuant to the Jencks Act, 18 U.S.C. § 3500 (1982), does not absolve the

government from providing it at a much earlier date as Brady material.  Classification as

Jencks Act material does not exempt such material from a pretrial disclosure order based

on Brady.  If both Brady obligations and the Jencks Act cover certain evidence, Brady

governs the timing of the evidence's production.  United States v. Starusko, 729 F.2d at

263 (compliance with Jencks Act does not necessarily satisfy due process concerns of

Brady); United States v. Gatto, 746 F. Supp. at 475.  See also United States v. Shifflett,

798 F. Supp. 354 (W.D. Va. 1992); United States v. Gallo, 654 F. Supp. 463 (E.D.N.Y.

1987).  But see United States v. Jones, 612 F.2d 453, 455 (9th Cir. 1979), cert. denied,

445 U.S. 966 (1980); United States v. Hart, 760 F. Supp. 653 (E.D. Mich. 1991).

If the Court determines due process does not demand

pretrial production, than defendant requests that the Court, nonetheless, order pretrial

disclosure.  The district court may, even when trial disclosure would satisfy due process,

order early disclosure of <u>Brady</u> material.  <u>United States v. Higgs</u>, 713 F.2d 39, 44 n. 6 (3d

Cir. 1983) ("the district court, within its discretion, may order [pretrial] disclosure to

ensure the effective administration of the criminal justice system." (citations omitted)).  The

Third Circuit specifically recognized that it was this circuit's "long standing policy"  to

encourage  "early production" of <u>Brady</u> material.  <u>United States v. Starusko</u>, 729 F.2d at

261 (citations omitted).

   Accordingly, the government should be ordered to disclose the information

requested.

PDF created with pdfFactory Pro trial version www.pdffactory.com

POINT IV

<u>THE GOVERNMENT SHOULD BE REQUIRED TO PROVIDE A
WRITTEN SUMMARY OF THE TESTIMONY OF ANY EXPERT THE
GOVERNMENT INTENDS TO INTRODUCE AT TRIAL UNDER
RULES 702, 703, AND 705 OF THE FEDERAL RULES OF EVIDENCE</u>

An amendment to Rule 16 of the Federal Rules of Criminal Procedure, effective

December 1, 1993, augments the discovery to which a defendant is entitled in advance of

trial.  Rule 16 now provides that should the Government intend to seek the introduction in

its case in chief of the testimony of an expert under rules 702, 703, and 705 of the Federal

Rules of Evidence, it must disclose a written summary of that testimony upon request.

Fed. R. Crim. P. 16(a)(1)(E).  The synopsis must set forth the qualifications of the witness,

the opinion of the witness, and the bases and reasons relied upon in support of that opinion.

<u>Id.</u>  Defendant now requests the disclosure of this written synopsis.

Thus far the government has provided notice and a summary of expert

testimony regarding firearms.  However, this case presents an issue of cell phone records

related to the defendant's whereabouts during the alleged robberies.  Counsel anticipates

this evidence will be presented in the Government's case in chief, and will require expert

testimony.

PDF created with pdfFactory Pro trial version www.pdffactory.com

POINT V

## THE GOVERNMENT SHOULD BE REQUIRED TO DISCLOSE BEFORE TRIAL ALL PRIOR CONDUCT EVIDENCE IT INTENDS TO USE AND THE COURT SHOULD REQUIRE A PRETRIAL HEARING TO DETERMINE THE ADMISSIBILITY OF SUCH EVIDENCE.

The defendant requests an order that requires the government to disclose prior to trial evidence of any prior conduct it intends to use as either impeachment material or as direct proof of illegal conduct.  In addition, Mr. Powell requests a pretrial hearing to determine the propriety of the government's use of such material.  Rule 404(b) of the Federal Rules of Evidence permits the government to offer evidence of other crimes, wrongs or acts to prove a defendant's motives, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.  Federal Rule of Evidence 608 permits the government to inquire into prior specific conduct of a witness upon cross-examination if, in the discretion of the Court, such inquiry is probative of truthfulness or untruthfulness.  The purpose of requesting pretrial disclosure of the government's intentions in this regard is to obviate the need for curative instructions, to provide counsel an opportunity to meet the proffered other crimes evidence in the course of its opening remarks to the jury, to weigh the crucial decision of whether an accused should exercise his right to testify and to allow counsel to investigate the evidence and effectively prepare for trial.  The Court should consider the Sixth Amendment rights of the defendant in this regard.  In making a determination under either of these rules, the Court must balance the probative value of the evidence against its prejudicial character.  If it is prejudicial character substantially outweighs its probative value, the evidence is inadmissible. Fed. R. Evid. 403; United States v. Brady, 595 F.2d 359, 361 (6th Cir.), cert. denied, 444 U.S. 862 (1979);

United States v. Goichman, 547 F.2d 778, 782 (3d Cir. 1976).  In the balancing process, the Court should consider factors such as the impeachment value of the prior acts, the remoteness of the prior acts, the similarity of the past acts to the present, the importance of the defendant's testimony, and the centrality of the credibility issue.  See, for example, United States v. Paige, 464 F. Supp. 99, 100 (E.D. Pa. 1978) (application to Fed. R. Evid. 609(a)(1)); see also, United States v. Hans, 738 F.2d 88 (3d Cir. 1984) (court excluded prior conviction based on its similarity to the present offense).

      The primary problem presented by other crimes evidence is that it is particularly persuasive on the issue of the defendant's propensity to commit crime, and this use of such evidence is impermissible.  United States v. Long, 574 F.2d 761, 766 (3d Cir.), cert. denied, 439 U.S. 985 (1978); Cf. United States v. Schwartz, 790 F.2d 1059 (3d Cir. 1986). A jury hearing other crimes evidence, whether it is admitted as circumstantial evidence under Rule 404(b), or for impeachment purposes under Rule 608, is likely to conclude "if he did it before, he probably did it this time." See e.g., Gordon v. United States, 383 F.2d 936, 940 (D.C. Cir. 1967), cert. denied, 390 U.S. 1029 (1968).  Indeed, courts have long acknowledged that "the average jury is unable, despite curative instructions, to limit the influence of a defendant's criminal record to the issue of credibility."  United States v. Puco, 453 F.2d 539, 542 (2d Cir. 1971), cert. denied, 414 U.S. 844 (1972); see also United States v. Figueroa, 618 F.2d 934, 943 (2d Cir. 1980) (recognizing instances where instructions to a jury cannot overcome prejudice); United States v. Palumbo, 401 F.2d 270, 273 (2d Cir. 1968) (courts should consider the propensity of a prior conviction to influence the minds of jurors improperly), cert. denied, 394 U.S. 947 (1969).

Given the number of factors the Court must examine, and the need for fundamental fairness, this hearing and its determination should, it is respectfully submitted, be conducted prior to trial.  This procedure has been applied by various courts and is recommended by leading authorities.  "[It is] appropriate to rule in advance that attacks on the defendant through bad acts will be limited in order to induce him to the stand. . . ."  3 Weinstein & Berger, Weinstein's Evidence, par. 608 [05], p. 608-30 (1978).

> [A] trial judge does have power in the  exercise of sound discretion to make
> an advance ruling prohibiting the use of a prior conviction for impeachment
> of a defendant if he finds that a prior conviction negates credibility only
> slightly but creates a substantial chance of unfair
> prejudice . . . .

United States v. Puco, 453 F.2d at 541 (quoting United States v. Palumbo, 401 F.2d at 273); see also United States v. Provenzano, 620 F.2d 985 (3d Cir.) (on motion in limine, court excluded one prior conviction which was too prejudicial and not probative of truthfulness), cert. denied, 449 U.S. 899 (1980); United States v. Cavender, 578 F.2d 528 (4th Cir. 1978).  But see Huddleston v. United States, 485 U.S. 681 (1988).

In addition to assisting the Court by permitting a pretrial balancing of the factors relevant to the admission of such evidence, early disclosure and pretrial determination of the admissibility of prior convictions and acts serves the valuable purpose of enabling counsel to aid the defendant to make other decisions intelligently.  See Weinstein & Berger, Weinstein's Evidence, par. 609 [03a], p. 609-70 (1978).

In the instant matter, Mr. Powell is unaware of the nature of any prior act evidence which the government might attempt to offer at trial.  If the government intends to introduce evidence of a prior conviction, prior "bad acts," or to cross-examine the defendant with

PDF created with pdfFactory Pro trial version www.pdffactory.com

respect to "bad acts" or prior convictions, it is respectfully requested that the government be required to disclose its intention prior to trial so that the defendant can have an adequate opportunity to investigate the incidents.  The defendant further requests that a pretrial hearing be conducted to determine the propriety of the government's use of any such evidence.

PDF created with pdfFactory Pro trial version www.pdffactory.com

<u>POINT VI</u>

<u>THE DEFENDANT SHOULD BE PERMITTED TO FILE
ANY ADDITIONAL MOTIONS WHICH MAY BECOME
NECESSARY</u>.

The defendant respectfully seeks permission to reserve the right to file additional
motions which become necessary or applicable to him on the basis of additional information.
Several of the motions filed request the production of information by the Government which
might trigger the need for additional motions to be filed on behalf of the defendant.  Under
Fed. R. Crim. P. 12(f) (which will become Rule 12(e) effective December 1, 2002 absent
contrary Congressional action), the Court may grant leave to file motions previously not
raised for good cause shown.  The discovery or disclosure of new information necessitating
such motions would constitute good cause.

<u>POINT VII.</u>

THE COURT SHOULD ORDER THE GOVERNMENT AGENTS
<u>PRESERVE AND RETAIN ROUGH NOTES AND WRITINGS.</u>

The defendant is charged in connection with events that which occurred over the past 18 months.  He is unaware of the length or breadth of the government's investigation, but respectfully requests that the Court order the government agents to retain any rough notes and writings so that the Court can determine whether disclosure is required under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) or the Jencks Act, 18 U.S.C. § 3500.

In <u>United States v. Harrison</u>, 524 F.2d 421 (D.C. Cir. 1975), the Court held that the decision whether rough interview notes are discoverable is for the trial court not the government.  Likewise, the Court concluded that the determination as to what constitutes a producible "statement" under the Jencks Act is for the Court and not the government.  <u>See also</u> <u>United States v. Maryland</u>, 476 F.2d 1170, 1176-78 (D.C. Cir. 1973) and <u>United States v. Bundy</u>, 472 F.2d 1266, 1267 (D.C. Cir. 1972).

CONCLUSION

For the reasons stated, it is respectfully requested that the relief sought herein be granted.

Respectfully submitted,

/s CHRISTOPHER O'MALLEY
Assistant Federal Public Defender

Dated: March 25, 2009

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | COURT NO. 08-592 (JHR) |
| | : | |
| v. | | CERTIFICATE OF SERVICE |
| | : | |
| MICHAEL POWELL | : | |

CHRISTOPHER H. O'MALLEY, Assistant Federal Public Defender, hereby certifies that on the 25TH day of March 2009,  I electronically filed via  ECF  a copy of the Notice of Motion,, and memorandum of law  regarding the above matter.  Same was addressed to Jacqueline M.. Carle, Assistant United States Attorney, 401 Market Street, Camden, New Jersey 08101 .

/s   CHRISTOPHER O'MALLEY

Assistant Federal Public Defender