UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Hon. Joseph H. Rodriguez |
| *Plaintiff*, | : | CRIM NO. 1:08-cr-00592 |
| v. | : | OPINION |
| MICHAEL POWELL | : | |
| *Defendant*. | : | |

This matter comes before the Court on Defendant Michael Powell's ("Defendant" or "Powell") pro-se and counsel-prepared motions for companionate release under the First Step Act 18 U.S.C. § 3582 (c)(1)(A)(i) [Dkt. 78, 80, 81] and the Government's response thereto. [Dkt. 82]. The Court has considered the parties' written submissions and, for the reasons stated below, will deny Defendant's Motion.

### I. Background

On April 30, 2008, Defendant entered the PNC Bank branch in Glendora, New Jersey, pointed a handgun at a PNC employee, ordered three employees into the bank's vault, and left with more than $70,000 in cash. [Dkt. 81-1 at 7; Dkt. 82 at 2]. On July 2, 2008, Defendant returned to the same PNC Bank with an accomplice and robbed the bank of $38,000, again pointing a handgun at a PNC employee. [Dkt. 81-1 at 7; Dkt. 82 at 2].

The Government charged Defendant with two counts of armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d), and two counts of brandishing a firearm in connection with a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii), (c)(2). [Dkt. 15]. A jury found Defendant guilty on all four counts. [Dkt. 35]. On November 10, 2009, the Court sentenced Defendant to 462 months of imprisonment and five years of supervised release. [Dkt. 39]. The

1

term of imprisonment consisted of two concurrent seventy-eight-month terms for the bank robbery counts, a consecutive eighty-four-month term on the first § 924(c) count, and a consecutive 300-month term on the second § 924(c) count. [*Id.*].  The eighty-four-month sentence resulted from a seven-year mandatory minimum required for the 924(c) violation, and the consecutive 300-month sentence reflected a twenty-five-year mandatory minimum required for successive § 924(c) violations under the then-existing sentencing regime. [*Id.*]. Defendant is currently in custody at FCI Gilmer in Glenville, West Virginia with a projected release date of September 18, 2041. [Dkt. 81-1 at 1].

Defendant filed the present motions for compassionate release under the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018), effective December 21, 2018 (the "FSA"), arguing that he presents two "extraordinary and compelling" reasons for a sentence reduction.  First, he argues that the FSA's revision to § 924(c)'s sentencing provisions—to be discussed at length below—justify a sentence reduction.  Second, he argues that his hypertension diagnosis and COVID-19 cases at FCI Gilmer threaten his health and physical wellbeing.  [Dkt. 81-1 at 1–2]. Defendant is fifty-two years old and claims that he "might be at an increased risk for severe illness from COVID-19" because he is diagnosed with "benign essential hypertension." [Dkt. 81-1 at 1–2].

## II. Discussion

Defendant's arguments for early release hinge largely on two changes to criminal sentencing effectuated by the FSA.  The first change concerns which parties may ask a court to modify an inmate's sentence.  Federal statute provides that, after considering the sentencing factors set forth in 18 U.S.C. § 3553(a), a court may reduce a sentence if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).  Before the FSA, §

3582(c) only permitted the Bureau of Prisons ("BOP") to petition courts on behalf of inmates whom the BOP deemed worthy of early release. *See United States v. Andrews*, No. 20-2768, 2021 WL 3852617, at *1–*2 (3d Cir. Aug. 30, 2021) (discussing 18 U.S.C. § 3582(c)). In 2018, "[t]he FSA modified 18 U.S.C. § 3582(c)(1)(A)(i) by permitting prisoners to seek a reduction in their sentences." *Hare v. Ortiz*, No. CR 18-588-1(RMB), 2021 WL 391280, at *2 (D.N.J. Feb. 4, 2021) (quoting *United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2020)). Under the FSA, inmates can now petition the BOP for early release and, if the BOP rejects or fails to respond to a petition, they may petition federal courts. *See* 18 U.S.C. § 3582(c)(1)(A); *Raia*, 954 F.3d at 595, 597 (explaining administrative exhaustion requirement for compassionate release motions).

The FSA left intact a Sentencing Commission policy statement,[1] U.S.S.G. § 1B1.13 (the "Policy Statement"), which lists four circumstances that may qualify as extraordinary and compelling reasons for sentence reduction:[2] an inmate's medical condition,[3] the age of the

---

[1] 18 U.S.C. § 3582(c)(2)(A) requires sentence reductions for "extraordinary and compelling reasons" to be "consistent with applicable policy statements issued by the Sentencing Commission."

[2] The Policy Statement provides in pertinent part that after considering applicable factors set forth in 18 U.S.C. § 3553(a), the "the court may reduce a term of imprisonment if the court determines that—Extraordinary and compelling reasons warrant the reduction . . . the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.

[3] As set forth in the Policy Statement, a defendant's medical condition may qualify as an extraordinary and compelling reason, if the defendant is suffering from a terminal illness or the defendant is,

  (I)    suffering from a serious physical or medical condition,

  (II)   suffering from a serious functional or cognitive impairment, or

  (III)  experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care

3

defendant, family circumstances, and "other reasons." *Id.* cmt. n.1(A)–(D).  The Sentencing Commission issued the Policy Statement before the FSA and, consistent with the pre-FSA regime, the Policy Statement facially applies to BOP-filed requests for early release.  U.S.S.G. § 1B1.13 ("Upon motion of the Director of the Bureau of Prisons…."); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020).  Likewise, the "other reasons" provision states that release may be justified where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.*  To date, neither Congress nor the Sentencing Commission has updated the Policy Statement or issued a new policy statement that reflects the FSA's changes to § 3582(c).  *See Andrews*, 2021 WL 3852617, at *3 n.4.

    Second, the FSA revised the mandatory minimum sentences for brandishing a firearm in connection with a crime of violence under 18 U.S.C. § 924(c).  Before the FSA, defendants charged with and convicted of multiple § 924(c) counts in the same prosecution were subject to a seven-year mandatory minimum for the first § 924(c) count and a twenty-five-year mandatory minimum for all other counts.  *See United States v. McCoy*, 981 F.3d 271, 275 (4th Cir. 2020).  This was referred to as "stacking" of penalties under § 924(c).  *Id.*  The FSA amended § 924(c) such that the twenty-five-year mandatory minimum only applies to a "violation of this subsection that occurs after a prior conviction under this subsection **has become final**." (emphasis added).  FSA § 403(b), 132 Stat. at 5222.  The result is that defendants convicted of multiple § 924(c)

---

    within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* cmt. n.1(A)

charges in the same prosecution are now subject to a consecutive seven-year mandatory minimum sentence for each § 924(c) conviction, and the twenty-five-year mandatory minimum sentence for multiple § 924(c) charges only applies in subsequent prosecutions. However, Congress explicitly provided that this amendment does not apply retroactively to defendants sentenced under the previous stacking regime, such as Defendant Powell. FSA § 403(b), 132 Stat. at 5222.

Defendant Powell argues that the eighteen-year disparity between the sentence that he received in 2009 due to § 924(c)'s stacking provision and the sentence that he *would receive* if he were sentenced today, coupled with the COVID-19 pandemic and his hypertension diagnosis, constitute extraordinary and compelling reasons to reduce his sentence. [Dkt. 81-1 at 4, 9]. The Government offers three counterarguments. First, the Government argues that the Court lacks discretion to find that a § 924(c) sentencing disparity constitutes an extraordinary and compelling basis for relief. [Dkt. 82 at 9–10]. The Government argues that the Policy Statement is binding on the Court and does not list sentencing disparities or Congress's refusal to make sentencing reductions retroactive as extraordinary and compelling reasons for sentence reduction. [Dkt. 82 at 8–10]. The Government also argues that the Court lacks authority under the Policy Statement's "other reasons" provision to find that these factors may warrant early release because that provision only grants such authority to the Director of the BOP. [Dkt. 82 at 10–12]. Powell disagrees, arguing that the Policy Statement only applies to BOP-filed motions—not inmate-filed motions such as Powell's—and therefore does not bar the Court from considering his § 924(c) sentencing disparity as an extraordinary and compelling reason for release. [Dkt. 81-1 at 4–6].

Second, the Government argues that the FSA's amendment to § 924(c)'s stacking provision is not an extraordinary and compelling basis for relief, and that the Court cannot reduce Defendant's sentence when Congress explicitly declined to make the amendment retroactive. [Dkt. 82 at 10–11]. Third, the Government argues that, even if the Court can reduce Defendant's sentence, the Court should decline to do so in light of § 3553(a)'s sentencing factors and Defendant's extensive history of violent criminal activity. [Dkt. 82 at 12].

The Third Circuit recently resolved the legal questions underlying the parties' dispute in *United States v. Andrews*.[4] 2021 WL 3852617. The Third Circuit held that the Policy Statement does not limit a district court's discretion to consider extraordinary and compelling reasons for release in an inmate-initiated compassionate release motion. *Id.* at *3 ("[T]he text of the [P]olicy [S]tatement explicitly limits its application to Bureau-initiated motions" and is therefore "not applicable—and not binding—for courts considering prisoner-initiated motions."). The Third Circuit also found that neither the § 924(c) sentencing disparity which the FSA created nor Congress's refusal to make the FSA retroactive constitute extraordinary and compelling reasons for early release. *Id.* ("The duration of a lawfully imposed sentence does not create an extraordinary or compelling circumstance… The nonretroactive changes to the § 924(c) mandatory minimums also cannot be a basis for compassionate release.").[5] However, the Third Circuit found that, if a district court concludes that extraordinary and compelling reasons exist separately, the FSA's revisions to the "sentencing landscape may be a legitimate consideration

---

[4] The parties anticipated that *Andrews* would decide the merits of their respective arguments. [*See* Dkt. 82 at 10–11].

[5] By finding that these factors "cannot be a *basis* for compassionate release," the Third Circuit also appears to have ruled that district courts may not consider these factors alongside others—such as health or family circumstances—to determine that extraordinary and compelling reasons for release exist based on a totality of the circumstances. *Id.* (emphasis added).

6

for courts at the next step of the analysis when they weigh the § 3553(a) factors." *Id.* at *5 (citations omitted).

Following *Andrews*, the Court agrees with Powell that the Policy Statement does not limit its review of Powell's request for early release but finds that the FSA's non-retroactive revision to § 924(c) and the eighteen-year sentencing disparity that it created do not constitute extraordinary and compelling bases for Powell's early release.

The Court now turns to Powell's argument that he is entitled to early release due to his hypertension diagnosis and the risk of illness due to the COVID-19 virus. "While 'the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release,' an inmate with a medical condition that increases risk for severe illness from Covid-19, may qualify as an extraordinary and compelling reason." *United States v. Warner*, No. 1:13-CR-00782, 2021 WL 71588, at *2 (D.N.J. Jan. 8, 2021) (quoting *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)). In making this determination, courts look to the conditions which the Center for Disease Control ("CDC") has identified as "high-risk" factors. *See, e.g.*, *United States v. Catanzarite*, No. CR 18-0362 (ES), 2020 WL 2786927, at *4 (D.N.J. May 29, 2020); *see also Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Aug. 23, 2021) ("Medical Conditions"). Here, Powell argues that his hypertension diagnosis combined with the threat of COVID-19 infection at FCI Gilmer constitute a "serious health condition" that justify his release from custody. [Dkt. 81-1 at 1–2].

Powell is correct that the CDC has identified hypertension as a condition that may make adults "more likely to get severely ill from COVID-19." *Medical Conditions*, *supra*. However, this condition on its own is insufficient to warrant release. While Powell is more likely than

7

younger adults to contract and become ill from the COVID-19 virus due to his age, he is also significantly less likely to require hospitalization or die from a COVID-19 infection than adults aged sixty-five and above.  *Risk for COVID-19 Infection, Hospitalization, and Death By Age Group*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-age.html (updated July 19, 2021).

Moreover, BOP staff have largely controlled the spread of COVID-19 at FCI Gilmer.  There are no active COVID-19 cases among inmates or staff at FCI Gilmer.  *COVID-19 Coronavirus*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Sept. 21, 2021).  The facility has fully vaccinated 1,167 inmates, which is approximately two-thirds of the 1,500 inmates housed at FCI Gilmer.  *Id.*  Vaccines reduce the likelihood that Powell and other inmates at FCI Gilmer will become infected with COVID-19, become ill from a COVID-19 infection, or transmit the COVID-19 virus, including the COVID-19 delta variant.  *Delta Variant*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html (last visited Sept. 21, 2021).  The BOP's efforts to vaccinate inmates against COVID-19 at FCI Gilmer also suggest that Defendant will have the opportunity to receive a vaccine if he has not done so already.  *See United States v. Goston*, No. 15-20694, 2021 WL 872215, at *2 (E.D. Mich. Mar. 9, 2021) (denying compassionate release to defendant with high-risk health conditions because "his access to the COVID-19 vaccine mitigates any extraordinary and compelling reasons that might otherwise justify release.").

Ultimately, the Court finds that Defendant Powell's hypertension diagnosis does not present an extraordinary or compelling reason for early release.[6] The Court will therefore deny Defendant's motion on this ground.

### III.     Conclusion

For the reasons discussed above, the Court will deny Defendant's motion for early release. An appropriate order will follow.

September 21, 2021                                                     /s/ Joseph H. Rodriguez

                                                                                    Hon. Joseph H. Rodriguez, USDJ

---

[6] To be sure, courts in this district and elsewhere have denied early release to inmates with hypertension despite the increased risk of COVID-19 illness, even before vaccination among inmates was widespread. *See United States v. Falci*, No. CR 17-228, 2020 WL 3410914, at *5 (D.N.J. June 22, 2020) (denying early release to inmate with hypertension and obesity); *United States v. Alexander*, No. CV 19-32 (FLW), 2020 WL 2507778, at *4 (D.N.J. May 15, 2020) (same); *United States v. Hammond*, No. CR 18-184, 2020 WL 2126783, at *5 (W.D. Pa. May 5, 2020) (denying compassionate release request to fifty-six-year-old inmate with hypertension and high blood pressure).